# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-------------------------------------------------------------------- X

*In re*     :

    :

THE FINANCIAL OVERSIGHT AND     :
MANAGEMENT BOARD FOR PUERTO RICO,     :

    :

      as representative of     :

    :

THE COMMONWEALTH OF PUERTO RICO, *et al.*,     :

    :

      Debtors.[1]     :

-------------------------------------------------------------------- X

THE OFFICIAL COMMITTEE OF UNSECURED     :
CREDITORS OF THE COMMONWEALTH OF     :
PUERTO RICO,     :

    :

      as agent of     :

THE FINANCIAL OVERSIGHT AND     :
MANAGEMENT BOARD FOR PUERTO RICO,     :

      as representative of     :

THE COMMONWEALTH OF PUERTO RICO,     :

        Plaintiff-Counterclaim-     :
        Defendant,     :

    :

      v.     :

    :

BETTINA WHYTE,     :

      as agent of     :

THE FINANCIAL OVERSIGHT AND     :
MANAGEMENT BOARD FOR PUERTO RICO,     :

      as representative of     :

    :

PROMESA Title III

Case No. 17-BK-3283 (LTS)

(Jointly Administered)

Adv. Proc. No. 17-00257-LTS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

THE PUERTO RICO SALES TAX FINANCING          :
CORPORATION ("COFINA"),                      :
                                             :
                    Defendant-Counterclaim-  :
                    Plaintiff,               :
                                             :
          and                                :
                                             :
THE COFINA SENIOR BONDHOLDERS'               :
COALITION,                                   :
                                             :
                    Intervenor-Defendant-    :
                    Counter and Crossclaim-  :
                    Plaintiff,               :
                                             :
          v.                                 :
                                             :
PERMITTED INTERVENORS,                       :
                                             :
                    Crossclaim Defendants.   :
------------------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW OF THE COFINA SENIOR BONDHOLDERS'
COALITION IN SUPPORT OF MOTION TO CERTIFY QUESTIONS UNDER
<u>PUERTO RICO LAW TO THE SUPREME COURT OF PUERTO RICO</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ............................................................................................................4

I.     THE PUERTO RICO LAW QUESTIONS ARE ELIGIBLE FOR
       CERTIFICATION TO SCOPR ...................................................................4

       A.     The Puerto Rico Law Questions Involve Only Puerto Rico Law ...........4

       B.     The Puerto Rico Law Questions Will Resolve The Commonwealth-
              COFINA Dispute .................................................................................9

II.    THE PUERTO RICO LAW QUESTIONS ADDRESS ISSUES THAT HAVE
       SIGNIFICANT IMPORT BEYOND THIS CASE ........................................10

III.   CERTIFICATION WILL NOT ADD UNDUE DELAY TO THESE
       PROCEEDINGS .......................................................................................11

IV.    THE STIPULATION EXPRESSLY CONTEMPLATED CERTIFICATION.................13

V.     THE COURT'S PRIOR DECISION DENYING THE *LEX CLAIMS* MOTION
       TO LIFT THE STAY IS IRRELEVANT TO THE PRESENT MOTION .......................14

CONCLUSION..........................................................................................................15

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.)*,
 482 F.3d 15 (1st Cir. 2007) ................................................................. 7

*AMPR v. Sist. Retiro Maestros IV*,
 190 D.P.R. 854 (2014) ............................................................... 11, 12

*Arizonans for Official English v. Arizona*,
 520 U.S. 43 (1997) ......................................................................... 12

*Barnhill v. Johnson*,
 503 U.S. 393 (1992) ......................................................................... 4

*BFP v. Resolution Trust Corp.*,
 511 U.S. 531 (1994) ......................................................................... 5

*Butner v. United States*,
 440 U.S. 48 (1979) ......................................................................... 4

*Charlestown Sav. Bank v. Martin (In re Colonial Realty Inv. Co.)*,
 516 F.2d 154 (1st Cir. 1975) ............................................................. 7

*Cuesnongle v. Ramos*,
 119 D.P.R. 457, 19 P.R. Offic. Trans. 493 (1987) ................................ 7

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.*,
 972 F.2d 453 (1st Cir. 1992) ........................................................... 15

*Domínguez Castro v. E.L.A.*,
 178 D.P.R. 1 (2010) ....................................................................... 12

*Fornaris v. Ridge Tool Co.*,
 400 U.S. 41 (1970) ......................................................................... 13

*In re Engage, Inc.*,
 544 F.3d 50 (1st Cir. 2008) ............................................................... 8

*In re Hundly*,
 603 F.3d 95 (1st Cir. 2010) ............................................................ 7, 8

*In re Jefferson Cty., Ala.*,
 484 B.R. 427 (Bankr. N.D. Ala. 2012) ............................................... 6

*In re Jefferson Cty., Ala.*,
 474 B.R. 228 (Bankr. N.D. Ala. 2012) ............................................... 6

*In re Northington*,
 876 F.3d 1302 (11th Cir. 2017) ......................................................... 7

*In re Pereira*,
 791 F.3d 180 (1st Cir. 2015) ............................................................. 9

*In re Trinidad Hernández v. E.L.A.*,
    188 D.P.R. 828 (2013) ................................................................................. 12

*McConaghy v. Sequa Corp.*,
    294 F. Supp. 2d 151 (D.R.I. 2003) .............................................................. 15

*Mich. Cent. R.R. Co. v. Powers*,
    201 U.S. 245 (1906) ................................................................................. 2, 4

*Pan Am. Comp. Corp. v. Data Gen. Corp.*,
    112 D.P.R. 780, 12 P.R. Offic. Trans. 983 (1982) ..................................... 7

*Segovia Dev. Corp. v. Constructora Maza, Inc.*,
    628 F.2d 724 (1st Cir. 1980) .................................................................. 7, 8

*Suárez v. C.E.E. I*,
    163 D.P.R. 347 (2004) .............................................................................. 12

*Quílez-Velar v. Ox Bodies, Inc.*,
    No. CT-2016-0010, 2017 WL 4125876, 2017 TSPR 165 (P.R. Aug. 31, 2017) ...................... 9

*Watchtower Bible Tract Soc'y of N.Y., Inc. v. Municipality of Santa Isabel*,
    869 F. Supp. 2d 215 (D.P.R. 2012) ........................................................... 9

*Watchtower Bible Tract Soc'y of N.Y., Inc. v. Municipality of Santa Isabel*,
    2013 WL 2554879 (D.P.R. June 11, 2013) .................................................. 9

**Statutory Authorities**

11 U.S.C. § 541(a) .............................................................................................. 6

11 U.S.C. § 541(b) .............................................................................................. 6

11 U.S.C. § 904 ................................................................................................... 8

28 U.S.C. § 1334(e)(1) ....................................................................................... 6

Puerto Rico Oversight, Management and Economic Stability Act (PROMESA), *codified
    at* 48 U.S.C. §§ 2101-2241 ........................................................... 6, 8, 9

P.R. Laws Ann. tit. 13, § 12 ............................................................................... 2

**Rules and Regulations**

P.R. S. Ct. R. 23-26 .......................................................................................... 11

Intervenor Defendant/Counter- and Crossclaim Plaintiff, the COFINA Senior Bondholders' Coalition[2], submits this reply memorandum of law in support of (i) the *Motion and Incorporated Memorandum of Law of the COFINA Agent to Certify Questions Under Puerto Rico Law to the Supreme Court of Puerto Rico* (Dkt. 329) (the "Motion to Certify") and (ii) the *Statement of the COFINA Senior Bondholders' Coalition in Support of, and Joinder to, the Motion to Certify* (Dkt. 332) (the "Joinder"), and respectfully states as follows:

## PRELIMINARY STATEMENT

The unambiguous language of the COFINA Enabling Act and the Puerto Rico Constitution dictates that COFINA owns the DST, and that the transfer of the DST to COFINA was constitutional.  However, if the Court finds ambiguity in the COFINA Enabling Act or the Puerto Rico Constitution that could lead to the rejection of the COFINA Enabling Act's express direction that the DST is COFINA's property, the Court should certify the questions presented in the Motion to Certify (the "Puerto Rico Law Questions") to the Supreme Court of Puerto Rico ("SCOPR").

The Commonwealth Agent and the Oversight Board argue that the COFINA Senior Bondholders' Coalition engages in gamesmanship by moving for certification only if this Court were inclined to grant summary judgment to the Commonwealth-side parties.[3]  However, neither the Commonwealth Agent nor the Oversight Board responds to the jurisprudential basis for this conditional support for certification.  *See* MSJ at 42-45.

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning given to them in the *Memorandum of Law of COFINA Senior Bondholders' Coalition in Support of Motion for Summary Judgment* (Dkt. 307) ("MSJ").

[3]  *See Omnibus Objection of Commonwealth Agent* (Dkt. 438) ("Commonwealth Agent Obj.") ¶ 21; *Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of COFINA Agent for Order Certifying Questions to Supreme Court of Puerto Rico* (Dkt. 439) ("Oversight Board Obj.") at 26-27.

1

*First*, federal courts have expressed reluctance to hold a state statute invalid under a state constitution. *See, e.g.*, *Mich. Cent. R.R. Co. v. Powers*, 201 U.S. 245, 291 (1906).  None of the objections identifies a single case where a federal court has done so, let alone a case with the enormous financial and policy implications present here.  Moreover, the *only* way to rule in favor of the Commonwealth-side parties at summary judgment would be to rule the COFINA Enabling Act unconstitutional (at least in part) because it states that the DST and DST Fund shall not be "available resources" of the Commonwealth.  P.R. LAWS ANN. tit. 13, § 12.  No one can or does suggest any ambiguity in that language—only that it be disregarded on constitutional grounds. Simply put, there is an imbalance in the need for certification depending on which side might prevail because there is an imbalance in the nature of the request for summary judgment:  Only the Commonwealth-side parties are asking a federal court to take the drastic step of declaring a Commonwealth statutory scheme in violation of the Puerto Rico Constitution.  And only the Commonwealth-side parties are taking a position that would prohibit Puerto Rico from taking advantage of securitizations based on an interpretation of Puerto Rico law in conflict with a near-unanimous Legislative Assembly and Secretaries of Justice of both parties.

*Second*, in contrast to the plain-language arguments relied upon by the COFINA Senior Bondholders' Coalition, the Commonwealth-side parties rest largely on the supposed purposes of the relevant statutory and constitutional provisions, peppered with selective and incomplete external sources.  The Oversight Board draws the illogical conclusion that the COFINA Enabling Act is not ambiguous because both sides argue that it is unambiguous in their favor.  Oversight Board Obj. at 21.  Indeed, a statute that "hereby transferred" the DST and made the DST not "available resources" of the Commonwealth unambiguously transferred the DST to COFINA. However, the Commonwealth-side parties' constitutional arguments are based on a theory of intent,

2

evasion, and public policy—not plain language.  These arguments, to the extent they should be considered at all despite their conflict with the actual text of the constitutional provisions, are best addressed by SCOPR.

*Third*, none of the objections raises any issue that would be a legal impediment to certification of the Puerto Rico Law Questions to SCOPR.  The assertion that there is some federal law "overlay" preventing certification can be summarily dismissed.  The Puerto Rico Law Questions themselves clearly do not implicate federal law, as their inquiry is limited to the effect of a *Puerto Rico* statute and the validity of that *Puerto Rico* statute under the *Puerto Rico* Constitution.  And because all claims implicating federal law have been dismissed from these proceedings, the answers to the Puerto Rico Law Questions will be outcome-determinative in this narrowly-defined COFINA-Commonwealth Dispute.[4]

*Finally,* none of the objections raises any issue that poses a legitimate practical impediment to certification of the Puerto Rico Law Questions to SCOPR.  Instead, the issues raised reflect an improper assumption that Puerto Rico courts should not or cannot efficiently decide the meaning of their own laws.  Accordingly, to the extent this Court finds ambiguities in those laws, there is no plausible basis for this Court to deprive the Puerto Rico courts of the opportunity to resolve them given their greater familiarity with those laws—and the language and syntax in which they were written.  That is especially true here because the Puerto Rico Law Questions go to the core of the Legislative Assembly's inherent authority to impose taxes and issue debt in order to address the financial needs of the Commonwealth, and the answers to these questions will directly impact

---

[4]   *See Order (A) Confirming Scope of COFINA and Commonwealth Agent's Authority Under Stipulation and Order and (B) Dismissing, Without Prejudice, Certain Claims That Exceed the Scope of the Commonwealth-COFINA Dispute* (Dkt. 167) at 5, 6 (clarifying that the Commonwealth-COFINA Dispute is narrowly defined as "whether the Commonwealth or COFINA owns the Pledged Sales Tax" and dismissing claims which fall outside of the Commonwealth-COFINA Dispute).

the Commonwealth's future ability to obtain financing.  A judicial ruling that will hinder such ability should not be imposed absent certification.  *See Mich. Cent. R.R. Co.*, 201 U.S. at 291 (certification is especially important "when the statute is one affecting the revenues of the [state], and therefore of general public interest").  Given the utmost importance of the resolution of the Commonwealth-COFINA Dispute to Puerto Rico's citizens, there is ample reason to believe that SCOPR will issue an opinion on the Puerto Rico Law Questions on an expedited basis—as it has historically done when presented with certified questions involving matters of public importance.

## ARGUMENT

I.     **THE PUERTO RICO LAW QUESTIONS ARE ELIGIBLE FOR CERTIFICATION TO SCOPR**

### A.     The Puerto Rico Law Questions Involve Only Puerto Rico Law

The Motion to Certify proposes five questions for certification to SCOPR concerning the interpretation and constitutionality of a Puerto Rico statute under the Puerto Rico Constitution. Nevertheless, the Commonwealth Agent, the Oversight Board, and the GO Group (collectively, the "Objectors") argue that the Commonwealth-COFINA Dispute cannot be decided under Puerto Rico law, because it is *federal* law that will determine whether the Commonwealth or COFINA owns the DST.[5]  Their position is untenable, however, given the formidable body of case law, including seminal U.S. Supreme Court cases, that instructs that "[p]roperty interests are created and defined by state law," *Butner v. United States*, 440 U.S. 48, 55 (1979), that is displaced only when there is a countervailing "controlling federal law."  *See, e.g.*, *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992).  None of the Objectors has identified any such countervailing controlling federal

---

[5]    *See, e.g.*, Commonwealth Agent Obj. ¶ 28; Oversight Board Obj. at 2; *Omnibus Objection of the Ad Hoc Group of General Obligation Bondholders to Motions to Certify Questions to the Supreme Court of Puerto Rico* (Dkt. 437) (the "GO Obj.") at 6.

law, and in fact applicable federal law (*i.e.*, PROMESA) demonstrates Congress's intent to *respect* ownership rights under Puerto Rico law.

As the U.S. Supreme Court has explained, "[f]ederal statutes impinging on important state interests cannot be construed without regard to the implications of our dual system of government," and "[t]o displace traditional state regulation in such a manner, the federal statutory purpose must be *clear and manifest*." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) (emphasis added; internal quotation marks and alterations omitted). "Absent a clear statutory requirement to the contrary," courts interpreting the Bankruptcy Code "must assume th[e] validity of the state-law regulatory background." *Id.* at 539.[6]

None of the Objectors has cited to any "clear and manifest" federal statutory purpose contrary to Puerto Rico's interest in having its law govern the determination of the ownership the DST. Instead, the Oversight Board cites to a *jurisdictional* provision of PROMESA unrelated to the application of substantive Puerto Rico law to the Commonwealth-COFINA Dispute, while the Commonwealth Agent cites to a concept—"property of the *estate*"—that is inapplicable in a case under Title III of PROMESA.[7]

The Oversight Board recasts the question before the Court as "whether the DST revenues are property of the Commonwealth as a Title III debtor *under PROMESA § 306(b)*, not whether they were transferred to COFINA or prioritized for payment of COFINA creditors under Puerto Rico law." Oversight Board Obj. at 13-14 (emphasis added). If the Commonwealth-COFINA Dispute is as the Oversight Board frames it, it is incredible that not a single litigant in the

---

[6]   The COFINA Senior Bondholders' Coalition incorporates by reference pages 13-15 of the *Reply Memorandum of Law of COFINA Senior Bondholders' Coalition in Support of Motion for Summary Judgment* (Dkt. 388) (the "SJ Reply").

[7]   The GO Group simply refers to "federal law" that should determine whether the disputed tax revenues are property of the Commonwealth. GO Group Obj. at 6.

Commonwealth-COFINA Dispute cites to that provision *even once* in any complaint, answer, counter-claim, summary judgment pleading, or oral argument in this adversary proceeding.

Section 306(b) of PROMESA, entitled "Property Jurisdiction," provides that "[t]he district court in which a case under this title is commenced or is pending shall have exclusive jurisdiction of all property, wherever located, of the debtors as of the commencement of this case." Section 306(b) therefore tracks 28 U.S.C. § 1334(e)(1) ("Section 1334"), applicable to cases under the Bankruptcy Code, which provides that the district court has exclusive jurisdiction of "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." Yet when courts in Bankruptcy Code cases analyze whether property constitutes "property of the debtor" or "property of the estate," they apply substantive state law or section 541, respectively, *not* Section 1334. *See, e.g.*, *In re Jefferson Cty., Ala.*, 474 B.R. 228, 248-49 (Bankr. N.D. Ala. 2012). Like Section 1334, section 306(b) does not provide a source of substantive law on what constitutes "property of the debtor." Thus, the grant of federal jurisdiction under section 306(b) is not "controlling federal law" that will displace Puerto Rico law in determining which Title III debtor owns the DST.

The Commonwealth Agent, for its part, would have the Court consider the omission of section 541's "property of the estate" from Title III to be inconsequential. However, "property of the estate" is not coterminous with "property of the debtor." As an initial matter, an estate is an entity distinct from a debtor. *See In re Jefferson Cty., Ala.*, 484 B.R. 427, 460-62 (Bankr. N.D. Ala. 2012). And "property of the estate" is in some ways more inclusive than "property of the debtor" and in other ways just different. *Compare* 11 U.S.C. § 541(a) *with id.* § 541(b).

Even when considering property of the estate, the existence and nature of a debtor's right to property is determined by state law. *See Segovia Dev. Corp. v. Constructora Maza, Inc.*, 628

F.2d 724, 726 n.4 (1st Cir. 1980) ("The Bankruptcy Act does not undertake to determine what property belonged to the bankrupt as of the date of bankruptcy . . . or the existence, priority or validity of liens on such property.  Questions of that nature are determined by reference to the laws of the state." (applying Puerto Rico law) (internal quotations and citation omitted)); *In re Northington*, 876 F.3d 1302, 1310 (11th Cir. 2017) ("[A]lthough whether an interest of the debtor is property of the estate is a federal question, the nature and existence of the debtor's right to property is determined by looking at state law." (internal quotations, alterations, and citation omitted)).[8]  That property of an estate may be subject to avoidance, or will be distributed to creditors under a plan, does not change the bedrock principle that state law applies in determining the extent of a *debtor's* property.  *See, e.g.*, *In re Hundly*, 603 F.3d 95 (1st Cir. 2010) (in the context

---

[8] The First Circuit case upon which the Commonwealth Agent and the Oversight Board rely is in complete accord.  In *Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.)*, 482 F.3d 15 (1st Cir. 2007), the First Circuit in fact adhered to Pennsylvania law so as not to frustrate commercial parties' expectations, and even "made [its] best guess as to how a Pennsylvania court would rule" as to the retroactive application of an amendment to Pennsylvania law that would have the effect of making a liquor license a property interest.  *Id.* at 18-21.  The other cases cited by the Commonwealth Agent and the Oversight Board are distinguishable.  *See* SJ Reply at 18 n.18.  For example, in *Charlestown Savings Bank v. Martin (In re Colonial Realty Investment Co.)*, 516 F.2d 154 (1st Cir. 1975), the court relied upon a provision of Chapter XII that expressly provided that the trustee or debtor in possession shall have the right to immediate possession of all property of the debtor in the possession of a mortgagee under a mortgage.  *Id.* at 158.  Thus, unlike here, there was a controlling federal statute that conflicted with the "idiosyncratic" state law that would have rendered a different result.

Moreover, the cases upon which the Oversight Board relies for the proposition that SCOPR "will not accept certified questions that involve questions of federal law, even when they are mixed with questions of Commonwealth law" (Oversight Board Obj. at 11) actually stand for a much narrower proposition than the Oversight Board suggests.  In *Pan Am. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780, 12 P.R. Offic. Trans. 983, 1000 (1982), SCOPR held:  "[W]e adopt the rule that only when the validity of the statute challenged under a provision of a state constitution with no counterpart in the federal Constitution may a question be properly certified."  The holding expressly reflects SCOPR's concern that its opinion could be merely advisory if the federal court were to determine that the statute in question violated the analogous federal constitutional provisions. *See also Cuesnongle v. Ramos*, 119 D.P.R. 457, 19 P.R. Offic. Trans. 493 (1987) (denying certification of the question whether Consumer Affairs Act could apply to a church-affiliated academic institution without violating provisions in the Puerto Rico Constitution that had federal counterparts).  The questions in *Pan American* and *Cuesnongle* are readily distinguishable from the Puerto Rico Law Questions, because the latter consider the constitutionality of the COFINA Enabling Act under provisions of the Puerto Rico Constitution that have no federal counterparts.

of a bankruptcy, certifying question to the Massachusetts Supreme Judicial Court to determine whether the debtor would be considered the owner of certain property under state law); *In re Engage, Inc.*, 544 F.3d 50 (1st Cir. 2008) (in the context of a bankruptcy, certifying question to Massachusetts Supreme Judicial Court to understand the extent of property rights under state law).

Far from preempting Puerto Rico law's role in determining property rights, PROMESA specifically *defers* to Puerto Rico law and its definitions of property rights. *See* PROMESA § 305; 11 U.S.C. § 904 (codifying Tenth Amendment's general prohibition on bankruptcy court's power to interfere with a debtor's property or revenues absent consent of the debtor); PROMESA § 303 (Title III "does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality, including expenditures for such exercise").  And, as discussed above, Title III, like Chapter 9, does not include the concept of "property of the estate" that would introduce federal law into the determination of property rights. In addition, PROMESA includes unique provisions that further demonstrate Congress's clear intent to respect ownership rights under Puerto Rico law.  For example, section 407 of PROMESA provides that if property of a covered territorial instrumentality of Puerto Rico is transferred *in violation of Puerto Rico law*, the transferee shall be liable for the value of the property.  PROMESA § 407; *see also id.* § 201(b)(1)(M) (requiring that a certified Fiscal Plan ensure that assets, funds, or resources of a territorial instrumentality are not loaned to, transferred to, otherwise used for the benefit of another instrumentality or territory, unless permitted by the territory's constitution or approved plan of adjustment); *id.* § 201(b)(1)(N) (requiring that a certified Fiscal Plan respect the lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or territorial instrumentality in effect prior to the date of enactment of

8

PROMESA); *id.* § 314(b)(6) (requiring the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in greater recoveries for creditors than the plan of adjustment).

**B.      The Puerto Rico Law Questions Will Resolve The Commonwealth-COFINA Dispute**

The Puerto Rico Law Questions will resolve all issues within the narrow scope of this Commonwealth-COFINA Dispute. Indeed, all federal claims have been dismissed from this action as out-of-scope. Thus, SCOPR's answers to the Puerto Rico Law Questions will determine who owns the DST. *See In re Pereira*, 791 F.3d 180, 185 (1st Cir. 2015) (noting that certification is appropriate where the outcome of the state law arguments "will control the case"); *Quílez-Velar v. Ox Bodies, Inc.*, 2017 WL 4125876, at \*3, 2017 TSPR 165 [P.R. Offic. Trans.] (P.R. Aug. 31, 2017) (accepting certification of question from the First Circuit because "our answer to the certified question would put an end to the judicial matter before the Court of Appeals").[9]

---

[9]   The Oversight Board incorrectly cites *Watchtower Bible Tract Society of New York Inc., v. Municipality of Santa Isabel*, 869 F. Supp. 2d 215, 220 (D.P.R. 2012), for the proposition that SCOPR will not accept certification of questions that will not resolve the entire dispute. In that case, the district court certified the question whether the Puerto Rico Access Control Law provided for the use of unmanned control access gates, and if so, was the use of such gates constitutional under the Puerto Rico Constitution. SCOPR in fact *did* answer the first part of the question. Case No. 3:04-cv-01452-GAG (Dkt. 855) ("The legal system in Puerto Rico expressly contemplates the implementation of access control mechanisms operated through an electronic device or lock.") (certified English translation provided at Exhibit 1 to the declaration of Susheel Kirpalani ("Kirpalani Decl."), filed concurrently herewith). SCOPR denied certification on the second part of the question regarding constitutionality "because any opinion by the Puerto Rico Supreme Court would not be a determining factor to be used in the disposition of the matter before the United States District Court for the District of Puerto Rico's consideration, in light of the decisions and orders by and from the First Circuit Court of Appeals in the case of *Watchtower Bible and Tract Society of New York, Inc. v. Sánchez Ramos*, 634 F.3d 3 (1st Cir. 2011)." *Id.* The question that the district court later certified and SCOPR accepted—whether Puerto Rico law allowed private residential roads—was an entirely separate question. *Watchtower Bible Tract Soc'y of N.Y., Inc. v. Municipality of Santa Isabel*, 2013 WL 2554879 (D.P.R. June 11, 2013).

## II.   THE PUERTO RICO LAW QUESTIONS ADDRESS ISSUES THAT HAVE SIGNIFICANT IMPORT BEYOND THIS CASE

The Commonwealth Agent claims that "[i]t is difficult to imagine a circumstance in which the questions listed by the COFINA side will arise again in any context."  Commonwealth Agent Obj. ¶ 30.  Even if repetition were a requirement for certification (it is not) the Commonwealth Agent's assertion simply is not true.  The Puerto Rico Law Questions go to the heart of the Commonwealth's ability to implement tax-backed securitizations or other securitizations backed by future revenue streams.  The ability to implement these types of securitizations will be crucial to the Commonwealth's ability to obtain lower-cost financing going forward.

The Puerto Rico Law Questions raise constitutional issues impacting the powers of the Legislative Assembly to raise money through the capital markets.  For example, the Commonwealth Agent alleges that COFINA debt violates the "Debt Service" and "Debt Maturity" clauses of the Puerto Rico Constitution even though COFINA bonds are neither a "direct obligation" nor "full faith and credit" debt of the Commonwealth.  *See Commonwealth Agent Second Amended Complaint* ¶¶ 138-42 (Dkt. 221).  The Commonwealth Agent also alleges that some COFINA bonds are invalid because the Commonwealth is prohibited from employing deficit financing.  *Id.* ¶¶ 156-73.  The answers to the Puerto Rico Law Questions will inform whether the Commonwealth can issue other types of non-full faith and credit debt, and use that debt to retire older, more expensive debt.

Moreover, whether the Legislative Assembly has the authority to manage its finances and determine what resources are and are not "available" in the context of Article VI, Section 8 of the Puerto Rico Constitution is not a one-time issue.  Indeed, both the Commonwealth Agent and the GO Bondholders claim that COFINA creates a slippery slope in which the Legislative Assembly can deem everything to be "unavailable," thus leaving the Commonwealth (and GO Bondholders)

with nothing.[10]  The Commonwealth-side parties cannot on the one hand call something a slippery slope and on the other describe it as a one-shot deal.

The Commonwealth Agent's argument that "[a] decision in this dispute, by this court, would bind only the parties to this Adversary Proceeding," (Commonwealth Agent Obj. ¶ 31), is a red herring.  This is true in *every* certification case.  A federal court's ruling on an issue of state law is never binding on state courts, and future litigants could always bring similar claims in state court in the hopes of a different outcome.  If that were the standard by which certification decisions were made, a federal court would never certify issues to state supreme courts.

## III.   CERTIFICATION WILL NOT ADD UNDUE DELAY TO THESE PROCEEDINGS

Certification will not add undue delay to these proceedings.  The Objectors' myopic review of the length of time SCOPR has taken to decide certification cases is limited to cases of interjurisdictional certification, none of which involved a controversy as critical to the future of the Island as the instant litigation.  Cases involving issues of public import have proceeded on a more expedited basis.[11]  For example, in cases involving challenges to measures adopted by the government to deal with the fiscal crisis, SCOPR rendered decisions within one to four months. *See, e.g.*, *AMPR v. Sist. Retiro Maestros IV*, 190 D.P.R. 854 (2014) (issuing certification and resolving question regarding unconstitutionality of law reforming teacher's pension system within

---

[10]   *See, e.g.*, *Commonwealth Agent's Motion for Summary Judgment and Incorporated Memorandum of Law* (Dkt. 322) at 34-37; *Motion for Summary Judgment of the Ad Hoc Group of General Obligation Bondholders* (Dkt. 345-1) at 23-24.  As the COFINA Senior Bondholders' Coalition explains in its opposition to the Commonwealth-side parties' motions for summary judgment, this slippery slope argument has no validity.  *See Omnibus Opposition of COFINA Senior Bondholders' Coalition to the Motions for Summary Judgment by the Commonwealth Agent, GO Bondholders, and Retirees Committee* (Dkt. 403-1) at 32-33.

[11]   These cases have arisen more frequently in the context of intrajurisdictional certification (*i.e.*, certification from a Puerto Rico lower court to SCOPR).  The procedure in that context is very similar to that for interjurisdictional certification (*i.e.*, certification from a federal or other state court). Interjurisdictional certification contemplates an aggregate of 25 extra days for pre-certification briefing. *See* P.R. S. Ct. R. 23-26 (Kirpalani Decl. Ex. 2).

11

three months) (certified English translation at Kirpalani Decl. Ex. 3); *In re Trinidad Hernández v. E.L.A.*, 188 D.P.R. 828 (2013) (issuing certification and resolving question regarding validity of public employees' pension system reform within one month) (Kirpalani Decl. Ex. 4); *Domínguez Castro v. E.L.A.*, 178 D.P.R. 1 (2010) (issuing certification and resolving question regarding constitutionality of government-wide fiscal reform within four months) (certified English translation at Kirpalani Decl. Ex. 5). And when presented with questions challenging the validity of ballots cast in the general election, SCOPR issued its opinion within three days. *See Suárez v. C.E.E. I*, 163 D.P.R. 347, 2004 TSPR 179 [P.R. Offic. Trans.] (2004). Given the public importance of the Commonwealth-COFINA Dispute, there is every reason to believe that SCOPR will render its opinion on the Puerto Rico Law Questions on an expedited basis.

Any delay that could result from this Court's certification of these critical questions to SCOPR will be justified, and the potential for delay absent certification may be even greater. According to the U.S. Supreme Court, "[w]arnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997). The U.S. Supreme Court also acknowledged that certification may "greatly simplify" an ultimate adjudication in federal court. *Id.* (internal quotations omitted) (noting that the case's complexity "might have been avoided had the District Court, more than eight years ago, accepted the certification suggestion made by Arizona's Attorney General"). Indeed, refusal to certify may itself increase the delay, should the First Circuit or the U.S. Supreme Court reverse a decision that the COFINA Enabling Act is unconstitutional or otherwise invalid. *Fornaris v. Ridge Tool Co.* is instructive in this regard. 400 U.S. 41 (1970). That case involved a

constitutional challenge under the U.S. Constitution's Contracts Clause to a Puerto Rico statute. After the First Circuit held that the law was unconstitutional, the U.S. Supreme Court reversed the decision because the statute had never been interpreted by a Puerto Rican court. *Id.* at 43-44. As the Court explained, Puerto Rico is a "Spanish-speaking Commonwealth with a set of laws still impregnated with the Spanish tradition" that warrants particular deference to the Puerto Rico courts. *Id.* at 42. The Court reversed and remanded with instructions that the district court "hold its hand until the Puerto Rican Supreme Court has authoritatively ruled on the local law question." *Id.* at 44. If this case takes a similar path, the potential delay that could result from *not* certifying the questions could be significantly longer than if the questions were certified now.

*Finally*, the Objectors cite to the fact that the motions for summary judgment have been "fully briefed" (Oversight Board Obj. at 22) and that the Court has heard "more than three hours of legal argument" on the pending motions (GO Obj. at 4). These arguments are disingenuous given that the Motion to Certify (and the COFINA Senior Bondholders' Coalition's Joinder) were filed well before summary judgment motions were fully briefed, and the movants sought to expedite the request. Moreover, the GO Bondholders' purported concern about delay contradicts their request for "further proceedings" regarding the certification order. *See* GO Obj. at 8. This Court has already granted the Oversight Board's request for briefing relating to certification (Dkt. 337, 344), which the GO Bondholders never challenged as insufficient. This briefing, together with the oral arguments that the Court will hear on April 25, 2018, will enable to the Court to fashion a certification order without further proceedings.

## IV.   THE STIPULATION EXPRESSLY CONTEMPLATED CERTIFICATION

The Commonwealth Agent and the Oversight Board cite to the *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* (Dkt. 996) (the "Stipulation") as providing a basis for denying certification, arguing that the Stipulation contemplates that this

13

Court will resolve the Commonwealth-COFINA Dispute.  Oversight Board Obj. at 22; Commonwealth Agent Obj. ¶¶ 32-33.  This argument is erroneous because the Stipulation expressly reserved "the right to seek Court approval of certification to the Supreme Court of Puerto Rico of the Commonwealth law issues in the Commonwealth-COFINA Dispute, subject to all other parties' rights to oppose such relief on any ground . . . ."  Stipulation ¶ 11.

The Commonwealth Agent and the Oversight Board also argue that, since the Agents were not signatories to the Stipulation, they did not reserve their rights to seek certification, and instead are constrained to litigate in this Court.  This argument is equally unavailing.  *First*, there is no basis for the limitations of the Stipulation on the nature of the proceeding to be binding while the reservation of rights is disregarded.  *Second*, the Oversight Board *was* a signatory to the Stipulation, in its capacity both as representative of the Commonwealth and as representative of COFINA.  One of the primary features of the Stipulation is that the Commonwealth Agent and COFINA Agent were appointed to act as *agents* for the Oversight Board as representatives of each of the Commonwealth and COFINA, respectively.  The Oversight Board's reservation of rights should therefore apply equally to its agents appointed to litigate the dispute.

## V.      THE COURT'S PRIOR DECISION DENYING THE *LEX CLAIMS* MOTION TO LIFT THE STAY IS IRRELEVANT TO THE PRESENT MOTION

The Oversight Board and the Commonwealth Agent both cite to the Court's prior decision denying certain of the COFINA parties' motion to lift the automatic stay in the Commonwealth's Title III case so that they could pursue certification of questions presented in the pre-petition lawsuit styled *Lex Claims, LLC v. Alejandro Garcia Padilla*, *et al.*, No. 16-02374 (FAB) (D.P.R. 2016) ("*Lex Claims*").  Reliance on this Court's prior decision is misplaced.

*First*, the posture of *Lex Claims* required the Court to deny the prior motion.  Upon the commencement of the Title III cases, the plaintiffs in *Lex Claims*, a group of GO Bondholders,

were divested of standing because the claims they had asserted were derivative of the rights of the Commonwealth, represented by the Oversight Board. As such, the action was not an appropriate vehicle for deciding the issues in the Commonwealth-COFINA Dispute.

*Second*, in denying the motion to lift the stay, the Court merely noted that resolution of the issues raised in the *Lex Claims* litigation "arguably" and "possibly likely" could involve federal law. *See* June 28, 2017 Hr'g Tr. at 75-77 (Dkt. 558). These statements recognizing the existence of a potential argument do not constitute law of the case.[12] Moreover, the issues in the *Lex Claims* litigation included claims that arose under federal law (*i.e.*, preemption under section 303(3) of PROMESA), which have been declared outside the scope of the Commonwealth-COFINA Dispute.

## CONCLUSION

The COFINA Senior Bondholders' Coalition respectfully requests that the Court grant the Motion to Certify, but only as an alternative basis for relief should this Court deny the relief requested by the COFINA Senior Bondholders' Coalition in its Motion for Summary Judgment, and grant such other and further relief as the Court deems appropriate.

---

[12] *See Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453, 459 (1st Cir. 1992) ("Dictum constitutes neither the law of the case nor the stuff of binding precedent."); *McConaghy v. Sequa Corp.*, 294 F. Supp. 2d 151, 160 (D.R.I. 2003) ("As the United States Supreme Court has recognized, only legal determinations, or rulings of law, are properly regarded as law of the case governing the same issue in subsequent proceedings. Further, an issue must actually be decided on the merits before it can be considered the law of the case.") (internal citation omitted).

DATED:  April 18, 2018

Respectfully submitted,
REICHARD & ESCALERA

**By :**    */s/ Rafael Escalera*
            **Rafael Escalera**
            USDC No. 122609
            escalera@reichardescalera.com

            **Sylvia M. Arizmendi**
            USDC-PR 210714
            arizmendis@reichardescalera.com

            **Fernando Van Derdys**
            USDC-PR 201913
            fvander@reichardescalera.com

            **Carlos R. Rivera-Ortiz**
            USDC-PR 303409
            riverac@reichardescalera.com

            **Gustavo A. Pabón-Rico**
            USDC-PR 231207
            pabong@reichardescalera.com

            255 Ponce de León Avenue
            MCS Plaza, 10th Floor
            San Juan, Puerto Rico 00917-1913

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

**Susheel Kirpalani** (*pro hac vice*)
susheelkirpalani@quinnemanuel.com

**Daniel Salinas**
USDC-PR 224006
danielsalinas@quinnemanuel.com

**David Cooper** (*pro hac vice*)
davidcooper@quinnemanuel.com

**Eric Kay** (*pro hac vice*)
erickay@quinnemanuel.com

**Kate Scherling** (*pro hac vice*)
katescherling@quinnemanuel.com

**Rex Lee** (*pro hac vice*)
rexlee@quinnmnauel.com

**Darren M. Goldman** (*pro hac vice*)
darrengoldman@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010-1603

*Counsel to the COFINA Senior Bondholders' Coalition*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

<u>/s/ Carlos R. Rivera-Ortiz</u>
USDC-PR 303409